IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**CAROL OSBORNE,**
**nka CAROL PRICE**

      **Plaintiff,**

vs.                                                                                                   Civ. No. 02-1140 LCS

**JO ANNE B. BARNHART,**
**Commisioner, Social Security**
**Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court upon Plaintiff's Motion to Reverse and Remand (Doc. 8) filed February 24, 2003.  Plaintiff filed a Memorandum in support of her motion (Doc. 9); Defendant filed a Response on April 16, 2003 (Doc. 12), and Plainitff filed her Reply on May 12, 2003 (Doc. 13).  The parties have consented to a United States Magistrate Judge conducting all proceedings in this matter, pursuant to 28 U.S.C. § 636(c).  The United States Magistrate Judge, having considerered the Motion, the Memorandum, the Response, the Reply, the adminstrative record, and the applicable law, and being fully advised, finds the Plaintiff's motion is well-taken and should be **GRANTED**.

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act.  Plaintiff filed an application for SSI payments on January 30, 2001. R. 66.  The claim was denied initially and on reconsideration.  R. 51-59.  Plaintiff thereafter filed a

request for hearing. R. 62. Plaintiff appeared and testified at a hearing held on February 15, 2002. R. 25. Plaintiff was represented by Mark. S. Sanford of the Jeffrey B. Diamond Law Firm. R. 25. Plaintiff alleged disability due to back and leg pain. R. 51.

## II. STANDARD OF REVIEW

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied correct legal standards. *See Hamilton v. Sec'y of Health and Human Svcs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support a conclusion." *Andrade v. Sec'y of Health and Human Svcs.*, 985 F.2d 1045, 1047 (10th Cir. 1993)(*quoting Broadbent v. Harris*, 698 F.2d 407, 414 (10th Cir. 1983)(citation omitted)). A decision of an ALJ is not supported by substantial evidence if the evidence supporting the decision is overwhelmed by other evidence on the record. *See Gosset v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988).

In order to qualify for supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *See Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. § 423 (d)(1)(a)). At the first four levels of the sequential evaluation process, the claimant must show that she is not engaged in substantial gainful employment; she has an impairment or combination of impairments severe enough to limit his ability to do basic work activities, and her impairment needs or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform the work he had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show

the claimant is able to perform other substantial gainful activity considering his residual functional capacity, age, education, and prior work experience. *See id.*

## II. FACTUAL BACKGROUND

Plaintiff, now 37 years old, filed her application for SSI on January 30, 2001 alleging disability since April 30, 2002. R. 13. Plaintiff is thus a "younger individual" as defined in the applicable regulations. 20 C.F.R. § 416.963(c). Plaintiff has an eighth grade education, and past relevant work as a nurse's aide and cashier. R. 43.

Plaintiff, who alleged disability due to back and leg pain, testified before the ALJ that she had back surgery in May 2000 and that while she returned to work twelve weeks after the surgery, at times she could not get out of bed due to pain. R. 29-33. She testified that she could not continue her job as cashier at Wal-Mart because she had difficulty lifting various products. R. 31. She also described that she had problems as a door greeter due to long periods of standing. R. 32. She testified that her pain extends from her back all the way down her left leg and that she is numb on her left side. R. 36.

In March 2001 Plaintiff began seeing Dr. Pennington, a pain specialist. R. 34. He suggested that she have neurolysis done to alleviate her pain. *Id.* Plaintiff testified that she did not have the procedure done because she did not have insurance. R. 35

Plaintiff testified that she was taking Lortab and Soma to control her pain as well as Pamelor[1]

---

[1] Pamelor affects chemicals in the brain that may become unbalanced and cause depression; it is used to relieve symptoms of depression such as feelings of sadness, worthlessness, or guilt; loss of interest in daily activities; changes in appetite; tiredness; sleeping too much; insomnia; and thoughts of death or suicide. WebMD, Medical Information; Drugs and Herbs, available at http://my.webmd.com/content/drugs/3/4046_1209?bn=Pamelor.

as a sleep aid and Paxil[2] for her anxiety attacks and depression. R. 33. She testified as to her current mental health by stating that her therapist at Carlsbad Mental Health Association, S. Scott Adams, recommended that she be evaluated by a psychiatrist at the center. R. 42. In October 1999, Plaintiff was prescribed Prozac[3] at Covenant Health Care Center. R. 410. In October of 2000, Plaintiff was given a prescription for both Zoloft[4] and Hydroxyzine.[5] R. 397. In August 2001, Plaintiff obtained a prescription for Pamelor from Dr. Pennington at Adobe Medical Center. R. 277. Finally, Plaintiff was given a prescription for Paxil in November 2001 by Carlsbad Medical Center. R. 385. In Claimant's Statement When Request for Hearing is Filed dated January 30, 2002, Plaintiff indicated that she had been prescribed both Pamelor and Paxil recently. R. 112. The ALJ dismissed Plaintiff's history of mental disorder by stating in his opinion that there is no medical evidence that establishes the existence of a severe mental impairment. R. 14.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the onset of the disability. R. 13 (citing 20 C.F.R. § 416.972). At step two, the ALJ found that

---

[2] Paxil is in a class of drugs called selective serotonin reuptake inhibitors; it affects chemicals in the brain that may become unbalanced and cause depression, panic or anxiety, or obsessive or compulsive symptoms. WebMD, *Medical Information; Drugs and Herbs*, available at http://my.webmd.com/content/drugs/3/4046_2140?bn=Paxil.

[3] Prozac is another in class of drugs called selective serotonin reuptake inhibitors and affects chemicals in the brain that may become unbalanced and cause depression or mood disturbances, eating disorders, or obsessive or compulsive symptoms. WebMD, *Medical Information; Drugs and Herbs*, available at http://my.webmd.com/content/drugs/2/4046_1860?bn=Prozac.

[4] Zoloft is another in a class of drugs called selective serotonin reuptake inhibitors and it affects chemicals in the brain that may become unbalanced and cause depression, panic or anxiety, obsessive or compulsive symptoms, or other psychiatric symptoms. WebMD, *Medical Information; Drugs and Herbs*, available at http://my.webmd.com/content/drugs/3/4046_2178?bn=Zoloft.

[5] Hydroxyzine depresses activity in the central nervous system (brain and spinal cord), which causes relaxation and relief from anxiety. WebMD, *Medical Information; Drugs and Herbs*, available at http://my.webmd.com/content/drugs/3/4046_1273?bn=Hydroxyzine.

Plaintiff's impairment was severe. *Id.* The ALJ at step three further found that Plaintiff's impairment did not meet or equal in severity any of the disorders described in the Listing of Impairments, 20 C.F.R. Part-4, Subt. P, app. 1. *Id.* At step four the ALJ found that Plaintiff retained residual functional capacity for a limited range of light work activity. R. 15. However, Plaintiff's impairment prevented her from performing her past relevant work, within the meaning of the guidelines. *Id.* While the impairment prevented Plaintiff from performing her past relevant work, at step five, the ALJ found that there were other jobs existing in significant numbers in the national economy that Plaintiff could perform, and thus Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## DISCUSSION

### A.      Whether the ALJ erred in discounting Plaintiff's Complaints of Pain.

Plaintiff argues that the ALJ erred in discounting Plaintiff's pain testimony and statements regarding her functional limitations. "Credibility determinations are peculiarly the province of the finder of fact," and will not be overturned if supported by substantial evidence. *Kepler v. Chater*, 68 F. 3d 387, 391 (10th. Cir. 1995); *see also Diaz v. Sec'y of Health and Human Servs.*, 898 F. 2d 774, 777 (10th Cir. 1990). In determining the credibility of pain testimony, the ALJ can weigh and evaluate numerous factors including, "the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nomedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the plaintiff and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence." *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). However, "'[f]indings as to credibility should be

closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *McGoffin v. Barnhart*, 288 F. 3d 1248, 1254 (10th Cir. 2002)(*quoting Huston v. Bowen*, 838 F. 2d at 1131).

In making his credibility determination, the ALJ noted the inconsistencies between Plaintiff's allegations of persistent pain and the objective medical evidence. The ALJ observed that physical therapy had been recommended but Plaintiff did not seek treatment of that kind. R.15. Furthermore, despite assertions of persistent pain, Plaintiff's treating physicians did not prescribe a pain management program. *Id.* In addition, the medical evidence undermines Plaintiff's position. In May 2000, Plaintiff underwent back surgery. R. 114. She returned to work in July 2000 and was able to work for five hours a day. *Id.* She consulted with a medical professional as to her lower back pain in August 2000. R. 398. Subsequent visits with medical professionals suggested that Plaintiff should try physical therapy before applying for disability benefits. R. 394. However, Plaintiff said she could not afford physical therapy and made no attempt to obtain therapy through alternate facilities, as Dr. Bearden suggested in January 2001. R. 393. In March 2001, Dr. Pennington stated that Plaintiff could return to work with standing and sitting limitations of six hours. R. 287. In April 2001, he noted that Plaintiff had full motor strength. R. 285. In August 2001, Dr. Balkman stated that Plaintiff was well-nourished and though she walked with a limp, she did not appear to be in acute distress. R. 277. Finally the ALJ noted that the record lacks evidence that Plaintiff's daily living activities are affected. R. 14. The ALJ made a supported finding that Plaintiff lacked credibility and thus, did not err in discounting her statements regarding pain.

**B.      Whether the ALJ erred in discounting Plaintiff's Mental Impairment.**

While the ALJ did not err in discounting Plaintiff's pain testimony, the ALJ did err in discounting Plaintiff's mental impairment. Plaintiff testified that she had seen therapist S. Scott Adams at CMHA who suggested that she make an appointment with a psychiatrist at the center. R. 42. Mr. Adams noted Plaintiff's difficulty sleeping as well as her bout with anxiety attacks. R. 318. Furthermore, Mr. Adams chronicled Plaintiff's history of mental impairment. Plaintiff was placed in a psychiatric ward in 1994 for suicidal ideation. R. 319. In addition, Plaintiff testified before the ALJ that she was taking Paxil for anxiety attacks as well as depression. R. 33. There is also independent evidence in the record of this fact. R. 385. Finally, Mr. Adams rated Plaintiff's Global Assessment of Functioning ("GAF"). The GAF scale is used to assess an individual's overall level of functioning, including psychological, social, and occupational functioning, and it is particularly useful in planning treatment. American Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 2000) [DSM-IV]. While Mr. Adams reported that Plaintiff seemed to be able to carry out her daily activities, he also assessed Plaintiff's GAF to be 50. Such a score indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifiting) or any serious impairment in social, occupational or school functioning (e.g., no friends, unable to keep a job). *Id.* at 34. The ALJ did not take note of this GAF, nor did he give more weight to particularized observations in the record. Given Plaintiff's testimony at the hearing and Mr. Adams' assessment of Plaintiff's mental health, The ALJ should have been alerted that Plaintiff might have been suffering from a non-exertional impairment that would have made reliance on the Medical-Vocational Guidelines ("Grids") inappropriate in this instance.

While Mr. Adams was not Plaintiff's treating physician and his assessment of Plaintiff's mental health was not binding on the ALJ, the ALJ could have given it some consideration since the record

indicates that Plaintiff may have been suffering from a severe mental impairment. In October 1999, Plaintiff obtained a prescription for Prozac from Dr. Verch at Covenant Health Care Center. R. 410. In October of 2000, Plaintiff was given a prescription for both Zoloft and Hydroxyzine, again from Covenant Health Center. R. 397. In August 2001, Plaintiff obtained a prescription for Pamelor from Dr. Pennington at Adobe Medical Center. R. 277. Finally, Plaintiff was given a prescription for Paxil in November 2001 by Carlsbad Medical Center. R. 385. In Claimant's Statement When Request for Hearing is Filed dated January 30, 2002, Plaintiff indicated that she had been prescribed both Pamelor and Paxil recently. R. 112. The record indicates that Plaintiff may have been suffering from a severe mental impairment and the ALJ erred in his summary disposition of Plaintiff's mental impairment. R. 14.

      Although the claimant bears the burden of providing medical evidence proving disability, the ALJ has the basic duty of inquiry to fully and fairly develop the record. *Baca v. Dep't of Health and Human Servs.*, 5 F. 3d 476, 479-80 (10th Cir. 1993). The evidence indicating that Plaintiff had a mental problem triggered the ALJ's duty to develop the record in this regard. *Carter v. Chater*, 73 F. 3d 1019, 1021-22 (10th Cir. 1996). The ALJ failed to satisfy this basic duty of inquiry. The ALJ could have further developed the record by ordering a consultative examination to assess the status of Plaintiff's mental condition and any effect on her ability to perform substantial gainful activity.

      The ALJ has broad latitude in determining whether to order a consultative examination. *See Diaz v. Secretary of Health and Human Servs.*, 898 F. 2d 774, 778 (10th Cir. 1990). In deciding whether the ALJ erred in not ordering a consultation, the Court must consider whether there is sufficient medical evidence in the record so that the ALJ can make an informed decision without a consultative examination. *Matthews v. Bowen*, 879 F.2d 422, 424 (8th Cir. 1989). In this situation

there was scant evidence concerning the effect of the Plaintiff's mental condition or her ability to work. A remand is required for the ALJ to further develop the record as to Plaintiff's mental health and its effect, if any, on her ability to participate in substantial gainful activity.

## CONCLUSION

I find that Plaintiff's Motion to Reverse or Remand is well-taken and should be **GRANTED** and that this matter be **REMANDED** to the Commissioner for the ALJ to further develop the record as to Plaintiff's mental health, which may include submission to a psychological consultative evaluation.

**IT IS SO ORDERED.**

_____
**LESLIE C. SMITH
UNITED STATES MAGISTRATE JUDGE**